**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 21-3183

_____

UNITED STATES OF AMERICA

v.

LAWRENCE LAWS, a/k/a Larry
                                        Appellant

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Crim. No. 2:18-cr-00224-001)
District Judge: Honorable Gene E.K. Pratter

_____

Submitted Under Third Circuit L.A.R. 34.1(a):
January 20, 2023

_____

Before: AMBRO, PORTER, and FREEMAN,
*Circuit Judges*.

(Filed: January 24, 2023)

_____

OPINION[*]

_____

_____

[*] This disposition is not an opinion of the full Court and, under I.O.P. 5.7, is not binding precedent.

PORTER, *Circuit Judge*.

Lawrence Laws and his associates robbed the Mermaid Bar in Germantown, Pennsylvania. Laws was convicted of Hobbs Act robbery under 18 U.S.C. § 1951(a) and of brandishing a firearm while committing that "crime of violence," a violation of 18 U.S.C. § 924(c)(1). The District Court sentenced him to 72 months on the robbery count plus the consecutive term of 84 months required by § 924(c)(1)(A)(ii). Laws says his offense did not involve interstate commerce and therefore failed to meet the jurisdictional element of § 1951(a). He also challenges an evidentiary ruling and two sentencing enhancements. These claims lack sufficient merit, so we will affirm.

I

We write for the parties, who are familiar with the record.[i] Under the Hobbs Act, "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery" is guilty of a federal offense punishable by up to 20 years in prison. 18 U.S.C. § 1951(a). The federal government does not have plenary power to prosecute crimes, so the text of § 1951 requires that the alleged conduct "affects commerce." *See, e.g.*, *United States v. Morrison*, 529 U.S. 598, 617–18 (2000) ("We . . . reject the argument that Congress may regulate noneconomic, violent criminal conduct based solely on that conduct's aggregate effect on interstate

---

[i] The District Court had jurisdiction pursuant to 18 U.S.C. § 3231. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

2

commerce."). Laws argues that the government did not establish this jurisdictional prerequisite at his trial. He is incorrect.

Our doctrine sets a remarkably low bar for jurisdiction in Hobbs Act prosecutions. Conduct that "produces any interference with or effect upon interstate commerce, whether slight, subtle or even potential, . . . is sufficient to uphold a prosecution." *United States v. Haywood*, 363 F.3d 200, 209–10 (3d Cir. 2004). Add to this the rule that we uphold a jury's verdict if "any rational trier of fact" viewing the evidence in the light most favorable to the government could have supported it, and Laws has a high hill to climb. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis removed).

The government's evidence was sufficient. It showed that Laws and his confederates made off with $5,000 after robbing the Mermaid and its owner, Michael Rosenberg. Laws emphasizes that about half the take came from withdrawals his associate made with Rosenberg's ATM card. But that still leaves more than $2,500 that a jury could have concluded came from the Mermaid, a business the government showed was engaged in interstate commerce through its purchases of wholesale beer. This is enough under *Haywood*. In that case, we affirmed a § 1951(a) conviction for a robbery of "approximately $40 to $60 in bills and approximately $10 in coins" because the Virgin Islands business—another bar—had made purchases from the mainland United States. 363 F.3d at 202, 211. So we are compelled to reject Laws' jurisdictional argument.

II

One of Laws' codefendants, Saleem Kennedy, accepted a plea agreement from the government and, in exchange, testified against Laws at trial. Laws argues that the District Court abused its discretion by not allowing him to cross-examine Kennedy about his three juvenile adjudications involving theft. Evidence of juvenile convictions is admissible only when offered (1) in a criminal case (2) against a non-defendant witness when (3) an adult's conviction for the same offense would be admissible to attack the adult witness's credibility, and (4) it "is necessary to fairly determine guilt or innocence." Fed. R. Evid. 609(d). Laws does not claim that the District Court misinterpreted Rule 609, so we review for an abuse of discretion. *United States v. Serafini*, 233 F.3d 758, 768 n.14 (3d Cir. 2000).

The Court did not abuse its discretion. It weighed the necessity of the proffered evidence to evaluate Kennedy's credibility and determined that the convictions were not admissible because they occurred when he "was 12, 13, [and] 16 years old." This reasoning was sound, especially because the Court permitted Laws to ask Kennedy about four armed robberies in which he participated, including that of the Mermaid Bar. Laws does not explain how confronting Kennedy with seven theft offenses rather than four would have improved his defense. The Court also permitted Laws to ask Kennedy about his cooperation agreement with the government and inconsistent statements he made to investigators. Laws was not deprived of the opportunity to attack Kennedy's testimony

4

with substantial impeachment evidence. There was no error, so we reject his Rule 609 argument.

III

U.S.S.G. § 2B3.1(b)(6) calls for a one-point enhancement "[i]f a firearm . . . was taken" during the commission of an offense. Section 1B1.3(a)(1)(B) explains that defendants are responsible for all acts that occurred during the commission of the offense that were "(i) within the scope of the jointly undertaken criminal activity, (ii) in furtherance of that criminal activity, and (iii) reasonably foreseeable in connection with that criminal activity." Laws argues that the District Court erred by applying this enhancement to him without making the required factual finding and that such a finding would have been clearly erroneous. We disagree.

United States Probation submitted a Presentence Investigation Report (PSR). The PSR recommended the § 2B3.1(b)(6) firearm enhancement. Laws objected, and the parties debated the enhancement during the sentencing hearing. The government argued that the elements of § 1B1.3(a)(1)(B) had been established, and the Court accepted the government's position and applied the enhancement. App 841–43, 853. Although the Court could have stated more clearly its determination that the taking of the weapon was foreseeable, as the text of § 1B1.3(a)(1)(B) requires, that finding is nevertheless apparent from the transcript of the hearing. *Id.*

The trial record plainly supported the application of the enhancement. Kennedy, one of Laws' associates, testified that the group knew that Rosenberg, the owner of the

5

Mermaid and a target of the robbery, had a gun. App. 406 ("One of us said where the gun at because we knew he had a gun."). Kennedy also testified that both he and Laws attempted to retrieve the firearm after Rosenberg disclosed its location, but Kennedy got there first. So it was foreseeable that a gun would be taken during the robbery; indeed, Laws attempted to do just that, only to be edged out by his partner. The District Court appropriately applied the enhancement.

IV

Section 2B3.1(b)(4)(A) of the Guidelines calls for a four-level enhancement in robbery offenses during which "any person was abducted to facilitate commission of the offense or to facilitate escape." There are "three predicates that must be met before the abduction enhancement can be applied." *United States v. Reynos*, 680 F.3d 283, 286 (3d Cir. 2012).

> First, the robbery victims must be forced to move from their original position; such force being sufficient to permit a reasonable person an inference that he or she is not at liberty to refuse. Second, the victims must accompany the offender to that new location. Third, the relocation of the robbery victims must have been to further either the commission of the crime or the offender's escape.

*Id.* at 286–87. As discussed, we review the District Court's supporting fact findings for clear error. *Id.* at 287. And we entrust "the degree of distance or definition of location . . . to the sound discretion of the District Court." *Id.*

Laws attacks the application of this enhancement because "the victims of the Mermaid robbery did not move to a 'new location.'" Appellant Br. 26. That is not correct. Kennedy testified that, working with Laws, he held Rosenberg and Claude

6

Bernhard, a bartender at the Mermaid, at gunpoint and forced them from the sidewalk back into the Mermaid. They then brought Rosenberg to the basement, isolating him from Bernhard.

In *Reynos*, we held that the abduction enhancement was appropriate when the defendants moved the employees of a pizzeria "from the bathroom area to the cash register," a distance of 34 feet. 680 F.3d at 289–90. The forced movements here were much more substantial. Laws and Kennedy relocated Rosenberg and Bernhard from a place of safety on the public sidewalk to the site of the robbery inside the Mermaid. So the District Court's application of the enhancement was appropriate.

V

For the reasons stated above, we will affirm the District Court.